UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DAVID COOK,**

        **Plaintiff,**

-vs-                                                         Case No.  6:06-cv-1193-Orl-19KRS

**CSX TRANSPORTATION, INC.,**

        **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment by Defendant CSX Transportation, Inc. (Doc. No. 59, filed Feb. 7, 2008);

2. Notice of Filing by Defendant (Doc. No. 60, filed Feb. 7, 2008);

3. Notices of Filings by Plaintiff David Cook (Doc. Nos. 66-78, filed Mar. 26, 2008);

4. Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment by Plaintiff (Doc. No. 83, filed Apr. 4, 2008); and

5. Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment by Defendant (Doc. No. 85, filed Apr. 23, 2008).

## Background

Plaintiff David Cook originally brought this action against Defendant CSX Corporation for discrimination and retaliation under the Railway Labor Act, unlawful threats under the Federal Employers' Liability Act, and retaliation under Florida's Whistleblower Act. (Doc. No. 2, filed Aug. 10, 2006.) Plaintiff then amended his Complaint to add Defendant CSX Transportation, Inc.

(Doc. No. 5, filed Aug. 14, 2006.) Plaintiff later filed a Second Amended Complaint and added claims of physical and emotional injuries due to Defendants' negligence in violation of the Federal Employers' Liability Act. (Doc. No. 26-2 at pp. 10-13, filed May 3, 2007.) Since that time, Plaintiff has settled all of his claims against Defendant CSX Corporation. (Doc. Nos. 64-65, filed Mar. 7, 2008.) The only remaining claims are Counts VI and VII against Defendant CSX Transportation, Inc. which allege negligence and negligent infliction of emotional distress in violation of the Federal Employers' Liability Act. (Doc. No. 26-2 at pp. 10-13.) Defendant CSX Transportation, Inc.[1] moves for summary judgment in its favor, and Plaintiff has filed an Amended Response in opposition to this Motion. (Doc. No. 59, filed Feb. 7, 2008; Doc. No. 83, filed Apr. 4, 2008.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

---

1. Hereinafter referred to as "Defendant."

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**Analysis**

Plaintiff has been employed by Defendant as a locomotive engineer since 1972. (Doc. No. 59 at p. 1; Doc. No. 83 at p. 4.) Plaintiff claims that on January 20, 2006, while coupling two train cars, he felt a sharp jolt and pain between his shoulder blades. (Doc. No. 83 at p. 7.) Plaintiff asserts that this jolt, on top of over thirty years of exposure to preventable "whole body vibrations" in poor ergonomic working conditions on Defendant's locomotives, caused him to suffer a debilitating, severe, and painful back injury. (Doc. No. 26-2 at p. 11; Doc. No. 83 at p. 9.) Plaintiff alleges that he tried to continue working at the railroad but had to stop in September of 2006 because of his pain. (Doc. No. 83 at p. 8.) The Railroad Retirement Board subsequently approved Plaintiff for total

disability. (*Id.*) Plaintiff claims that he has suffered depression as a result of his injury and inability to work. (*Id.* at pp. 19-20.)

### I. Negligence (Count VI)

Defendant moves the Court to grant summary judgment in its favor on Count VI because "the undisputed evidence demonstrates that there was no negligence . . . ." (Doc. No. 59 at p. 2, ¶ 1.) Specifically, Defendant asserts that "the facts conclusively establish that there was . . . no breach of any duty owed by [Defendant] to Plaintiff." (*Id.* at p. 5, ¶ 8.) Plaintiff argues in response that there is ample evidence of breach in the record and that he has "clearly presented a jury issue regarding liability and damages." (Doc. No. 79 at p. 18.)

#### A. Applicable Law

Plaintiff brings this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60 (2006). The Act provides, in relevant part:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

*Id.* § 51. As explained by the United States Supreme Court, under this provision, "A railroad has a duty to use reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Sante Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987).

An employee may show that an employer breached its duty of reasonable care by utilizing common law principles governing breach. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544

(1994); *Urie v. Thompson*, 337 U.S. 163, 174 (1949) (holding courts should apply common law principles established by the federal courts). As the Supreme Court has explained:

> [An] employer's liability [under FELA] is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done.

*Tiller v. Atl. Coast Line R.R. Co.*, 318 U.S. 54, 67 (1943). An employee may also satisfy the breach element under the theory of negligence *per se*. *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 431 (1958). The Supreme Court has stated that "a defect resulting from a violation of [one of the statutes governing locomotive equipment safety and maintenance] which causes the injury or death of an employee creates liability without regard to negligence." *Id.*

Once a plaintiff shows that a railroad company breached its duty, either under a regular negligence or a negligence *per se* theory, a relaxed standard of causation applies. *Consol. Rail Corp.*, 512 U.S. at 543 (citing *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). According to the Supreme Court, "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers*, 352 U.S. at 506. However, the Supreme Court has warned that this relaxed standard should not be construed to turn FELA into a workers' compensation statute. *Consol. Rail Corp.*, 512 U.S. at 543. The Court explained, "We have insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" *Id.* (quoting *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947)).

### B.     Arguments of the Parties

Defendant bases its Motion for Summary Judgment on the allegation that Plaintiff cannot prove that Defendant breached its duty to maintain a safe working environment during the coupling that took place on January 20, 2006. (Doc. No. 59.)[2] Plaintiff responds by saying that this coupling was merely the "straw that br[oke] the camel's back" and that "36 years . . . of locomotive engineering exposed to intense vibration, shocks & (sic) jolts, particularly in poor ergonomic and primitive work conditions, created an ongoing cumulative injury to [Plaintiff's] back . . . ." (Doc. No. 83 at p. 9.)  Specifically, Plaintiff asserts, Defendant breached its duty by demanding that Plaintiff work excess overtime hours and providing inadequate engineer seats in the locomotives. (*Id.* at pp. 15-18.)  Furthermore, Plaintiff argues that these seats violate the Federal Locomotive Inspection Act's[3] requirement that Defendant ensure its locomotives are "in proper condition and safe to operate without unnecessary danger of personal injury." (*Id.* at p. 11 (quoting 49 U.S.C. § 20701).)  Therefore, according to Plaintiff, Defendant is liable under a theory of negligence *per se*. (*Id.* at pp. 11-15.)  Regarding this negligence *per se* theory, Defendant argues in its Reply that Plaintiff relies on unpled allegations of violations of the Federal Locomotive Inspection Act. (Doc. No. 85 at pp. 1-4, ¶¶ 1, 4, filed Apr. 23, 2008.)  Defendant further states, "Defendant is unfairly surprised and unable to adequately prepare a defense to the issues of strict liability presented by such claims a mere two months prior to trial and after discovery has been cut off." (*Id.* at p. 3, ¶ 4.)

---

[2]    Defendant does not argue lack of causation or injury in its Motion; therefore, the Court will not analyze such elements here. (*See* Doc. No. 59.)

[3]    Federal Locomotive Inspection Act, 49 U.S.C. §§ 20701-03 (2006) (one of the statutes governing locomotive equipment safety and maintenance).

### C. Claims Properly Before the Court

The Eleventh Circuit has held that the liberal pleading standard of Federal Rule of Civil Procedure 8(a) is "inapplicable after discovery has commenced." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). As the Court explained, "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Id.* Thus, a plaintiff may not raise new "claims," in effect amending his or her complaint, through argument in a brief opposing summary judgment. *Id.* (noting that the proper procedure would be to move for leave to amend the complaint). Allegations raise a new "claim" when they create a different theory of relief, such as an "additional, separate statutory basis for entitlement . . . ." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).[4]

In the Second Amended Complaint, Plaintiff alleges that Defendant was negligent under FELA. (Doc. No. 26-2 at pp. 10-12.) However, Plaintiff does not mention the Federal Locomotive Inspection Act or negligence *per se* anywhere in his Complaint. (*See id.*) Since a violation of the Federal Locomotive Inspection Act would constitute an additional, separate statutory basis for relief under FELA, Plaintiff's arguments concerning such alleged violation raise a new claim. *See Hurlbert*, 439 F.3d at 1297. Because Plaintiff has raised a new, unpled claim of negligence *per se*

---

[4] The *Hurlbert* case rejected a plaintiff's attempts to argue entitlement to leave under the Family and Medical Leave Act for his mother's serious health condition when the plaintiff pled facts concerning only his own serious medical condition. However, this case discusses that such a new "claim" does not have to be a new and independent cause of action but merely may be a new, unpled theory of the case. 439 F.3d at 1297; *see also McConnell v. Lassen County*, No. 2:05-cv-909-FCD-DAD, 2007 WL 1412300, at **10-11 (E.D. Cal. May 14, 2007).

in his brief in opposition to summary judgment, the Court must exclude Plaintiff's arguments concerning this new claim from its consideration of Defendant's Motion for Summary Judgment.

### D. Merits of the Parties' Arguments on the Issue of Breach

Federal common law indicates that an employer breaches its duty under FELA when two elements are met: (1) an employee suffers a reasonably foreseeable workplace injury that (2) the employer failed to take reasonable care to prevent. *See Urie*, 337 U.S. at 178. As the Supreme Court has explained, "negligence, within the meaning of the Federal Employers' Liability Act, attache[s] if [the employer] 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect [the employee] and similarly situated employees." *Id.*

An employee raises a triable issue of foreseeability by producing "probative facts from which [a] jury could find that [the employer] was or should have been aware of conditions which created a likelihood that [the employee], in performing the duties required of him, would suffer just such an injury as he did." *Rogers*, 352 U.S. at 503. An employer's "knowledge, actual or constructive, of the alleged inadequacies of the [employer's] equipment [is] a jury question." *Urie*, 337 U.S. at 178; *see also Rogers*, 352 U.S. at 509 ("Cognizant of the duty to effectuate the intention of the Congress to secure the right to a jury determination, this Court is vigilant to exercise its power of review in any case where it appears that the litigants have been improperly deprived of that determination.").

Once an employee raises a genuine issue of material fact that his injury was foreseeable, the employee must show that the employer failed to take reasonable care to prevent the injury. As the Supreme Court stated: "Ordinary care must be in proportion to the danger to be avoided and the

consequences that might reasonably be anticipated from the neglect. It must be commensurate with known dangers." *Urie*, 337 U.S. at 179-80 (internal citations omitted). The ultimate question of fact is "whether or not, under the particular conditions described in this case, the defendant furnished plaintiff a reasonably safe place in which to work . . . ." *Id.* at 179 n.17. Thus, an employee raises a triable issue concerning the second element of breach if he produces evidence that his employer failed to use reasonable care to maintain a reasonably safe place to work. *E.g.*, *Balt. & Ohio Sw. R.R. Co. v. Carroll*, 280 U.S. 491, 496 (1930) (quoted in *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007)).

Since Plaintiff alleges that he was injured as a result of being required to work extended hours in a defective seat, the Court must consider whether Plaintiff has produced evidence raising genuine issues of material fact that: (1) Plaintiff's back injury was reasonably foreseeable, and (2) Defendant failed to take reasonable care to prevent this injury by maintaining a reasonably safe work environment.

### 1. Foreseeability

Regarding the foreseeability component, Plaintiff has introduced evidence that Defendant knew or should have known that back injuries could result from extended exposure to vibrations in poorly designed or worn-out locomotive cab seats.

First, Plaintiff has introduced evidence of a 1972 study by the United States Department of Transportation, Federal Railroad Administration, entitled *Human Factors Survey of Locomotive Cabs*, PB-213225. (Doc. No. 70 at p. 3, ¶ 9.) This study provided, in part:

> The present practice, where the rail roads specify the type and arrangement of equipment to be built in locomotive cabs by the manufacturers, can not result in good human factors design by its nature. A universal cab with all of its equipment

>designed according to the principles of human factors engineering must be developed and adopted for the entire rail road industry.

(*Id.*)  The study also recommended additional research on vibration exposure and improvements to locomotive engineer seating.  (*Id.*)

Secondly, Plaintiff has offered evidence of a study commissioned by the Association of American Railroads in January 1980, Report R-404.  (*Id.* at p. 3, ¶ 10.)  According to Plaintiff's evidence, this report "found that seats in American railroads needed to be replaced to provide better protection against vibration caused injuries among employees working on locomotives."  (*Id.*)  Furthermore, the study "encouraged member railroads, including CSXT, to conduct their own vibration studies and consider replacement of their locomotive seats with newer ergonomically friendly seats, because of the high rate of back complaints."  (*Id.*)

Thirdly, Plaintiff provides evidence of a 1998 study by the United States Department of Transportation, Federal Railroad Administration, entitled *Human Factors Guidelines for Locomotive Cabs*, DOT-VNTSC-FRA-98-8.  (*Id.* at pp. 3-4, ¶ 11.)  The study found, in part:

>**The lack of appropriate seating in the cab environment is one of [the] most thoroughly documented problems.  (Emphasis added.)**  Engineers complain of lower back, neck and shoulder pains related to sitting posture (Hedberg, 1987; Kerst, 1991).  The lack of adequate seating results from a mismatch between the anthropometric requirements of train engineers for the seats and control stand and the actual dimensions of this equipment (Kerst, 1991).

(*Id.*)

Finally, Plaintiff has offered the deposition testimony of Robert Benard, a retired management employee of Defendant, and Donald Robey, Defendant's assistant chief engineer for work equipment.  (Doc. Nos. 73, 75.)  Both witnesses testified that Defendant conducted ergonomic studies on its locomotive design, including the seats, as early as the mid-1980's.  (Doc. No. 73 at p.

19; Doc. No. 75 at p. 8.) These studies included investigations concerning the impact of locomotive vibrations on railroad employees. (Doc. No. 75 at p. 8.)[5]

A jury could infer from the existence of these studies[6] that Defendant knew, or should have known, that its locomotive engineer seats were poorly designed and could cause back injuries after prolonged exposure to locomotive vibrations. In other words, a jury could find that Plaintiff's injury was reasonably foreseeable.

### 2. Reasonable Care

Plaintiff has also produced evidence that Defendant failed to take reasonable care to maintain a reasonably safe working environment.[7] Specifically, Plaintiff has provided evidence suggesting that the seats were poorly designed, causing engineers to sit in awkward positions when coupling trains, and that the seats were worn out and no longer supportive, causing preventable back injuries to employees working extended hours on the trains. In this way, Plaintiff argues, Defendant failed to take reasonable care to maintain a reasonably safe working environment.

Plaintiff stated in his Affidavit that he was not properly warned about the dangers involved in sitting sideways in the seat to look towards the back of the locomotive when coupling cars:

---

[5] The record is not clear as to the results of Defendant's studies.

[6] Defendant has not filed any objection as to the admissibility of these studies. In any event, this evidence is admissible under various exceptions to the rule excluding hearsay. *E.g.*, Fed. R. Evid. 803(8) (public report); *id.* at R. 803(16) (ancient document); *id.* at R. 803(17) (commercial publication).

[7] There is a disconnect between Plaintiff's and Defendant's arguments. Defendant relies primarily on the assertion that Plaintiff has not demonstrated that the coupling on January 20, 2006 was performed in an unsafe manner. (*See* Doc. No. 59.) This does not address Plaintiff's theory of the case, however, as Plaintiff argues that the long-term effects of improper seat design, awkward posturing, and fatigue caused his injury. (*See* Doc. No. 83.)

> Prior to my on-the-job injury on January 20, 2006, I had no idea that twisting in the seat on the locomotive to look backward to engage in a coupling was in any manner a potential safety hazard. CSXT never advised me as an employee that this was a potential safety hazard, though CSXT had safety rules for nearly every activity engaged in by an employee. CSXT never issued any safety bulletins or warnings that indicated there was any potential safety concern with engineers twisting in the seat to look backwards. The seats on the locomotives which I operated did not swivel enough to allow the engineer to sit square in the seat and swivel the seat around to allow the engineer to look toward the back of the locomotive; therefore, the engineer had to slide around so he was sitting sideways on the seat with his arm over the back of the seat. In my many years of experience as an engineer with CSXT, I believed that it was safer to be able to look toward the back rather than rely upon rearview mirrors. CSXT could have eliminated any potential safety concern about how the engineer sat in the seat had they installed swivels on the seats that allowed the seat to swivel around at least 90 degrees so the engineer did not have to sit sideways in the seat to look toward the back of the train.

(Doc. No. 71 at p. 1, ¶ 2). In his deposition, Michael Tanner also stated that "there is no CSX rule saying what the proper position of a seat would be." (Doc. No. 74 at p. 16.)

Additionally, the locomotives in the Taft yard where Plaintiff worked contained older seats that were in poor condition. Plaintiff stated that "the seats on the switcher locomotives that I was assigned to operate in the Taft yard were all wobbly because the bases were worn out." (Doc. No. 71 at p. 1, ¶ 3.) Mr. Tanner also explained: "you're constantly being moved back and forth, and the fact that so many of the seats on these older engines were just completely worn out and just flopped around as they sit on top of the pedestal." (Doc. No. 74 at p. 17.) Mr. Tanner continued:

> The old seats that are on that style of locomotive, I mean, I worked on one last night as a matter of fact going to Jacksonville. The seat itself has no cushioning to it at all besides just the foam cushion.
>
> It sits on a metal platform, and it comes up to mid back, actually a little lower than the chairs we're sitting in now. It's just a mid-back seat. It has no cushioning for any side motions.
>
> And over the years, the bracket that they sit in, it has a lot of play in it. So it's like, say, it's sitting on top of a pedestal that's just–it basically bounces back and forth.

(*Id.* at p. 20.)  While Defendant selected a better seat for its locomotives in the early 2000's, these new seats had not yet been retrofitted in the switcher locomotives that Plaintiff was assigned to ride in the Taft yard.  (*Id.* at pp. 17-18; Doc. No. 75 at p. 10.)

Plaintiff also has provided the expert testimony of Dr. Eckardt Johanning.[8]  In his Affidavit, Dr. Johanning stated:

> I have been retained by Mr. David Cook as an expert in occupational health . . . to evaluate his medical conditions and work exposure.  I have special expertise in whole-body vibration, ergonomics and adverse health problems and concluded based on my own work place investigation and study, that Mr. Cook had significant life-time exposure to preventable whole-body vibration and poor ergonomic work conditions.

(Doc. No. 70 at pp. 1-2, ¶ 2.)  In a medical report on Plaintiff, Dr. Johanning opined:

> As a locomotive engineer Mr. Cook was typically exposed to the well recognized risk factors for low back disorders, such as prolonged seating and awkward body posture as well as to significant whole-body vibration and jolts during his work duties inside the locomotive cabs.  In general, the exposure of locomotive engineers during yard switching and road service operations are characterized by high levels of horizontal vibration in combination with vertical vibration, frequent irregular shocks and jolts, as well as poor (frequent[ly] awkward) body posture and many musculoskeletal ergonomic stressors.  It appears that the ride before his debilitating injury was particularly troublesome due to excessive vibrations, shocks and bouncing, that resulted in an acute spinal disorder and pain syndrome.
>
> A[n] inspection [of] his specific work conditions and possible exposures to whole-body vibration was conducted by me earlier.  This inspection and my earlier experience of similar conditions and work duties confirmed that the exposures that Mr. Cook experienced area competent and significant cause of back stressors and adverse effects with mechanical wear and tear on the body structures, primarily the spine.

---

[8]  Plaintiff has filed evidence of Dr. Johanning's qualifications and prior expert testimony on these issues, as well as Dr. Johanning's methodology in reaching his opinions in this case.  (Doc. No. 60; Doc. No. 66-3; Doc. No. 69; Doc. No. 70 at p. 2, ¶¶ 4-6.)  Therefore, absent any objection from Defendant, the Court finds that it may properly consider the opinion testimony of Dr. Johanning since he qualifies as an expert witness under Federal Rule of Evidence 702.

(Doc. No. 69 at p. 4.) In his deposition, Dr. Johanning explained in greater detail that the coupling incident on January 20, 2006 was "the famous straw that breaks the camel's back" and exacerbated the "micro traumas" that Plaintiff had suffered in his years working as a locomotive engineer. (Doc. No. 66 at pp. 15-19.) He further explained that he observed the seats in Defendant's switcher locomotives at the Taft yard where Plaintiff worked and found them to be wobbly. (*Id.* at pp. 35-37.) As he explained, "the person who sits on the seat will have to constantly counteract a wobble effect that will result in muscular fatigue that then again results in excessive and overaction to jolts that has deleterious effects." (*Id.* at p. 36.)

Viewing this evidence in the light most favorable to Plaintiff and drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has raised a genuine issue of material fact that Defendant breached its duty under FELA. Therefore, the Court must deny Defendant's Motion for Summary Judgment on Count VI.

**II.     Negligent Infliction of Emotional Distress (Count VII)**

The United States Supreme Court has held that FELA provides for a cause of action based on the negligent infliction of emotional distress. *Gottshall*, 512 U.S. at 550. Thus, "a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury." *Id.* Plaintiffs may recover for stand-alone emotional distress claims if they: "(1)سustain a physical impact as a result of a defendant's negligent conduct; or (2) are placed in immediate risk of physical harm by that conduct–that is, those who escaped instant physical harm, but were within the zone of danger of physical impact." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003) (quoting *Gottshall*, 512 U.S. at 547-48). In other words, if a plaintiff suffers a physical injury as a result of

a defendant's negligence, the plaintiff may also recover for emotional harms arising from this physical injury under a theory of negligent infliction of emotion distress. *See id.*

Though Defendant purports to move for summary judgment on this Count, Defendant has offered no argument whatsoever as to why summary judgment is appropriate on Plaintiff's negligent infliction of emotional distress claim. (*See* Doc. No. 59.) In its Reply to Plaintiff's Response, Defendant briefly addresses the issue:

> Plaintiff's contention that Defendant fails to sufficiently state its 'argument regarding' Count VII of Cook's Second Amended Complaint which addresses negligent infliction of emotional distress ignores the contentions in Defendant's Motion addressing the lack of any record evidence to support a finding of negligence against CSXT.

(Doc. No. 85 at p. 2, ¶ 3.) Thus, Defendant appears to rely on its argument that it did not breach any duty to Plaintiff, and therefore is not liable for Plaintiff's physical or emotional injuries, to support its Motion for summary judgment on both Counts VI and VII.

As explained above, Plaintiff has raised a genuine issue of material fact as to whether Defendant breached its duty of reasonable care. *See* Section I, *supra*. Plaintiff claims this breach caused both his physical injuries under a negligence claim and his emotional injuries under a negligent infliction of emotional distress claim. (*E.g.*, Doc. No. 26-2 at pp. 10-13.) There is evidence in the record of Plaintiff's mental and emotional suffering resulting from his back injury and inability to work. (*E.g.*, Doc. No. 60-3 at pp. 10-11; Doc. No. 72.) Since Defendant only argues the issue of breach and there are genuine issues of material fact concerning this element, the Court must deny Defendant's Motion for Summary Judgment on Count VII.

**Conclusion**

Based on the foregoing, the Court **DENIES** Defendant's Motion for Summary Judgment (Doc. No. 59, filed February 7, 2008).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May 8 , 2008.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record